IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY E. TOMBS,                                               No. 2:13-cv-1340-MCE-CMK-P

       Plaintiff,

    vs.                                                                    <u>ORDER</u>

JORDAN KEITH WALLACE,

       Defendant.

_____/

       Plaintiff, a former state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's amended complaint (Doc. 8).

       The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means

that claims must be stated simply, concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I.  PLAINTIFF'S ALLEGATIONS

Plaintiff's claims are not clear.  He specifically names only one individual as a defendant to this action, Jordan Keith Wallace, but refers to various other individuals in regards to his some of his claims.  He also sets forth a list of individuals who each purportedly did "some thing" to plaintiff during his incarceration.  His statements regarding each of his claims are vague and fail to allege sufficient facts for the court to determine if his claims are frivolous.  His claims appear to include lack of medical treatment, use of excessive force, retaliation, and tampering with mail.  The facts as the court can glean from each of these claims are discussed below.

## II.  DISCUSSION

Plaintiff's complaint suffers from several defects.  First and foremost, plaintiff fails to set forth a short and plain statement of his claim as required by Rule 8 of the Federal Rules of Civil Procedure.  To satisfy the requirements of Rule 8(a) claims must be stated simply, concisely, and directly.  Here, plaintiff fails to allege sufficient facts to support his claims.  Plaintiff does not plead with sufficient clarity any of his possible claims.

In addition, if the court's reading the complaint is accurate, plaintiff is attempting to bring this action against several unrelated individuals on separate and unrelated claims.  The Federal Rules of Civil Procedure allow a party to assert "as many claims as it has against an opposing party," but does not provide for unrelated claims against several different defendants to

be raised on the same action. Fed. R. Civ. Proc. 18(a). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). As far as the court can determine, plaintiff's claims against the various defendants are unrelated. Thus, those unrelated claims against several different defendants, should be separated into different actions.

Plaintiff also fails to allege any facts against the individuals listed as those who have done something wrong to him during his incarceration. To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

As to the specific claims plaintiff mentions in his statement, the standards for those the court can decipher will be outlined for plaintiff's benefit. As discussed below, if plaintiff chooses to file an amended complaint, he will be required to set forth with more particularity what his claims are.

      1.     EIGHTH AMENDMENT (use of force/medical treatment)

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

When prison officials stand accused of using excessive force, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees.  See Whitley, 475 U.S. at 320-21.  In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response.  See Hudson, 503 U.S. at 7.  The absence of an emergency situation is probative of whether force was applied maliciously or sadistically.  See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc).  The lack of injuries is also probative.  See Hudson, 503 U.S. at 7-9.  Finally,

4

1  because the use of force relates to the prison's legitimate penological interest in maintaining
2  security and order, the court must be deferential to the conduct of prison officials.  See <u>Whitley</u>,
3  475 U.S. at 321-22.

4     Similarly, prison officials have a duty to take reasonable steps to protect inmates
5  from physical abuse.  See <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1250-51 (9th Cir. 1982); <u>Farmer</u>, 511
6  U.S. at 833.  Liability exists only when two requirements are met:  (1) objectively, the prisoner
7  was incarcerated under conditions presenting a substantial risk of serious harm; and (2)
8  subjectively, prison officials knew of and disregarded the risk.  See <u>Farmer</u>, 511 U.S. at 837.  The
9  very obviousness of the risk may suffice to establish the knowledge element.  See <u>Wallis v.
10 Baldwin</u>, 70 F.3d 1074, 1077 (9th Cir. 1995).  Prison officials are not liable, however, if
11 evidence is presented that they lacked knowledge of a safety risk.  See <u>Farmer</u>, 511 U.S. at 844.
12 The knowledge element does not require that the plaintiff prove that prison officials know for a
13 certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion
14 of danger.  See <u>Berg v. Kincheloe</u>, 794 F.2d 457, 459 (9th Cir. 1986).  Finally, the plaintiff must
15 show that prison officials disregarded a risk.  Thus, where prison officials actually knew of a
16 substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if
17 harm ultimately was not averted.  See <u>Farmer</u>, 511 U.S. at 844.

18    In addition, deliberate indifference to a prisoner's serious illness or injury, or risks
19 of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See <u>Estelle</u>, 429
20 U.S. at 105; <u>see also</u> <u>Farmer</u>, 511 U.S. at 837.  This applies to physical as well as dental and
21 mental health needs.  See <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or
22 illness is sufficiently serious if the failure to treat a prisoner's condition could result in further
23 significant injury or the "unnecessary and wanton infliction of pain."  <u>McGuckin v. Smith</u>, 974
24 F.2d 1050, 1059 (9th Cir. 1992); <u>see also</u> <u>Doty v. County of Lassen</u>, 37 F.3d 540, 546 (9th Cir.
25 1994).  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the
26 condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's

daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

   The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

   Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

   To the extent plaintiff alleges the use of excessive force, his claim appears to be against defendant Wallace for actions that occurred ten years ago, as stated in the complaint. As best as the court can tell, defendant Wallace body slammed plaintiff in the parole office in Marysville around 2005 or 2006[1]. Defendant Wallace was then allegedly fired from his position

---

[1] It further appears that most if not all of plaintiff's claims would be barred by the statute of limitations. For claims brought under 42 U.S.C. § 1983, the applicable statute of limitations is California's statute of limitations for personal injury actions. See Wallace v. Kato, 549 U.S. 384, 387-88 (2007). In California, there is a two-year statute of limitations in § 1983 cases. See Cal. Civ. Proc. Code § 335.1; Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004). But state tolling statutes do apply to § 1983 actions. See Elliott v. City of Union City, 25 F.3d 800, 802 (citing Hardin v. Straub, 490 U.S. 536, 543-44 (1998)). Accordingly, prisoners generally have four years from the time the claim accrues to file their action. Cal. Civ. Pro. Code

with parole, and hired by California Department of Corrections and Rehabilitation (CDCR) as a plumber. It is unclear to the court whether the claims against defendant Wallace are for use of excessive force for the body slamming incident, or if plaintiff is attempting to claim some other violation based on defendant Wallace's position within CDCR.

As to his claim related to medical treatment, there appears to have been some incident with whether or not plaintiff was allowed to use a wheelchair. However, what happened, and who denied him the use of medical equipment is unclear. There also appears to have been an incident that he had a reaction to some medication including pain in his leg and some bad side effects. Again, it is unclear how his reaction to medication violated his Eighth Amendment rights.

### 2. RETALIATION

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment

---

§ 352.1(a).

1  rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes,
2  408 F.3d at 568.
3        As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not
4  alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm
5  that is more than minimal will almost always have a chilling effect." Id. at n.11.  By way of
6  example, the court cited Pratt in which a retaliation claim had been decided without discussing
7  chilling.  See id.  This citation is somewhat confusing in that the court in Pratt had no reason to
8  discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate
9  penological interests.  See Pratt, 65 F.3d at 808-09.  Nonetheless, while the court has clearly
10 stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse
11 action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also
12 Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action
13 which is more than minimal satisfies this element.  Thus, if this reading of Rhodes is correct, the
14 chilling effect element is essentially subsumed by adverse action.
15       Plaintiff states he was subjected to retaliation, but fails to provide the court with
16 any clear understanding of who did what, and how his First Amendment rights were violated.
17       3.  MAIL TAMPERING
18       Prisoners have a First Amendment right to send and receive mail.  See Witherow
19 v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam).  Prison officials may intercept and censor
20 outgoing mail concerning escape plans, proposed criminal activity, or encoded messages.
21 See Procunier v. Martinez, 416 U.S. 396, 413 (1974); see also Witherow, 52 F.3d at 266.  Based
22 on security concerns, officials may also prohibit correspondence between inmates.  See Turner v.
23 Safley, 482 U.S. 78, 93 (1987).  Prison officials may not, however, review outgoing legal mail
24 for legal sufficiency before sending them to the court.  See Ex Parte Hull, 312 U.S. 546, 549
25 (1941).  Incoming mail from the courts, as opposed to mail from the prisoner's attorney, for
26 example, is not considered "legal mail."  See Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996),

amended by 135 F.3d 1318 (9th Cir. 1998).

Specific restrictions on prisoner legal mail have been approved by the Supreme Court and Ninth Circuit. For example, prison officials may require that mail from attorneys be identified as such and open such mail in the presence of the prisoner for visual inspection. See Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Sherman v. MacDougall, 656 F.2d 527, 528 (9th Cir. 1981). Whether legal mail may be opened outside the inmate's presence, however, is an open question in the Ninth Circuit. At least three other circuits have concluded that legal mail may not be opened outside the inmate's presence. See id. (citing Taylor v. Sterrett, 532 F.2d 462 (5th Cir. 1976), Back v. Illinois, 504 F.2d 1100 (7th Cir. 1974) (per curiam), and Smith v. Robbins, 452 F.2d 696 (1st Cir. 1972)); see also Samonte v. Maglinti, 2007 WL 1963697 (D. Hawai'i July 3, 2007) (recognizing open question). At least one court in this circuit, however, has concluded, based on citation to a Sixth Circuit case, that a "prison's 'pattern and practice' of opening confidential legal mail outside of [the] inmate's presence infringes upon [the] inmate's First Amendment rights and access to the courts." Oliver v. Pierce County Jail, 2007 WL 1412843 (W.D. Wash, May 9, 2007) (citing Muhammad v. Pritcher, 35 F.3d 1081 (6th Cir. 1994)). The Ninth Circuit has, however, held that an isolated instance or occasional opening of legal mail outside the inmate's presence does not rise to the level of a constitutional violation. See Stevenson v. Koskey, 877 F.2d 1435, 1441 (9th Cir. 1989).

Again, plaintiff's claims regarding his mail are unclear. It appears that ten years ago, mail was returned to his wife stating that plaintiff was no longer incarcerated at that particular prison, which was untrue. It also appears that a letter written to the warden was removed from the prison mail box, and the warden never received. Nothing in the complaint, as far as the court can find, would rise to a level of a First Amendment violation. Plaintiff may be able to provide additional facts and clarify what happened in order to actually state a claim.

/ / /

/ / /

### IV. CONCLUSION

Plaintiff's complaint, as currently written, fails to state a claim. It is up to plaintiff to formulate and articulate his claim, not for the court or the defendants to try to decipher what claims plaintiff has. Plaintiff need not agree with the claims set forth above, and may include in his complaint those he wishes to pursue. However, he is cautioned, as discussed above, that the court will not allow this case to proceed on multiple unrelated claims against multiple unrelated defendants.

Because it is possible that some of the deficiencies identified in this order may be cured by amending the complaint, plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id. In addition, plaintiff is cautioned that the pleading stage is not the time for submission of numerous exhibits and other alleged evidence. His claims and factual allegations should be clearly alleged in his amended complaint, but he need not support his claims with documentary evidence at the pleading stage. Therefore, plaintiff shall refrain from filing numerous exhibits and other documentary evidence with his complaint. Such evidence will be permitted during the dispositive motion phase and/or at trial.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how

each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). The complaint also must contain only claims which are related, either arising out of the same transaction or occurrence or against the same defendants. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. Proc. 18(a).

Finally, plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's amended complaint (Doc. 8) is dismissed with leave to amend;

2. Plaintiff shall file a second amended complaint within 30 days of the date of service of this order; and

3. The Clerk of the Court is directed to provide plaintiff with a copy of a form Civil Rights Complaint.

DATED: December 23, 2015

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE